# Silver, Appellant, v. Bush.

*Deed—Grant—Scope of grant—Mineral—Definition.*

The cardinal test of the meaning of any word in any particular case is the intent of the parties using it.

Mineral is not per se a term of art or of trade but of general language, and presumably is intended in the ordinary popular sense which it bears among English speaking people. It may in any particular case have a different meaning, more extensive or more restricted, but such different meaning should clearly appear as intended by the parties.

A deed granted certain "pieces or parcels of land . . . . together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversion and remainders, rents, issues, and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said parties of the first part," and the habendum in the deed was "to have and to hold the said piece or parcel of land except the mineral underlying the same and the right of way to and from said mineral which the first parties reserve." There was no evidence that the parties intended that the word "mineral" in the deed should include natural gas. *Held*, that the grantee took the natural gas under the deed.

Argued Oct. 11, 1905. Appeal, No. 190, Oct., T., 1905, by plaintiffs, from order of C. P. Armstrong Co., March T., 1905, No. 110, refusing to take off nonsuit in case of Mary Silver et al. v. U. G. Bush and the Pittsburg Plate Glass Company. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Trespass for injuries to land. Before PATTON, P. J.

At the trial it appeared that on May 8, 1891, Stephen A. Forrester conveyed to Ulysses G. Bush a certain tract of land in South Buffalo township, Armstrong county, containing forty-five acres and seventeen perches, to have and to hold the same, " except the mineral underlying the same, and the right of way to and from said mineral, which the said parties reserve." The plaintiffs are the successors in title to Stephen A. Forrester, and under the above-quoted reservation claimed the right to take the natural gas from under the land of the defendants. The defendants are the grantees in said deed and those claim-

ing under him, and deny that under the above reservation natural gas is excepted.

Other facts appear by the opinion of the Supreme Court.

The court refused plaintiffs' offer to prove that natural gas was being drilled for in the surrounding territory at and prior to the date of the deed.

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) refusal to take off nonsuit; (2, 3) rulings on evidence, quoting the bill of exceptions.

*W. J. Christy*, with him *James H. McCain*, for appellant.—
The appellants contend that the natural gas, as well as all other minerals, underlying the Stephen A. Forrester farm, the surface of which was conveyed to Mrs. Libengood, E. E. Bush and U. G. Bush, was excepted and reserved to said Forrester : Shoenberger v. Lyon, 7 W. & S. 184 ; Hendler v. R. R. Co., 209 Pa. 256 ; Northern Pac. R. R. Co. v. Soderberg, 188 U. S. 526 (23 Sup. Ct. Repr. 365) ; Griffin v. Fellows, 81* Pa. 114 ; U. S. v. Buffalo Nat. Gas Fuel Co., 172 U. S. 339 (19 Sup. Ct. Repr. 200) ; Gill v. Weston, 110 Pa. 312 ; Blakley v. Marshall, 174 Pa. 425 ; Marshall v. Mellon, 179 Pa. 371 ; Light & Heat Co. v. Elk Co., 191 Pa. 465 ; Jennings v. Bloomfield, 199 Pa. 638.

*Orr Buffington*, with him *O. W. Gilpin* and *Rush Fullerton*, for appellees, cited : Dunham v. Kirkpatrick, 101 Pa. 36 ; Hendler v. R. R. Co., 209 Pa. 256 ; Westmoreland, etc., Nat. Gas Co. v. DeWitt, 130 Pa. 235 ; Dark v. Johnston, 55 Pa. 164 ; Funk v. Haldeman, 53 Pa. 229.

OPINION BY MR. CHIEF JUSTICE MITCHELL, January 2, 1906 :

The conveyances to the defendants were of certain "pieces or parcels of land . . . . together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the

estate, right, title, interest, property, claim and demand whatsoever, of the said parties of the first part," and the habendum in each deed is " to have and to hold the said piece or parcel of land except the mineral underlying the same and the right of way to and from said mineral which the first parties reserve." It is argued that the grantees took only an estate in the surface for agricultural and other strictly surface purposes, and that all minerals of every kind underlying the surface were excepted from the grant. But it is manifest that no such narrow construction can be sustained. The grant is of the land, and the additional words used are of the most comprehensive character, including all estates, interests and rights in the land. Nothing whatever would have been left in the grantors were it not for the reservation in the habendum, and that is of " the minerals underlying the same, and the right of way to and from " the same. The reservation must be read in its connection, and cannot be given a construction as extensive as the grant, for then it would be void for repugnancy. Even in a case where the grant was in terms only of the surface of the land, reserving " all coal and other minerals," it was held that the grantee took the entire fee, to use for all purposes except mining or taking the excepted minerals or interfering with the grantor's reserved right to do so : Hendler v. Lehigh Valley R. R. Co., 209 Pa. 256.

This court has had rather frequent occasion to consider the word mineral, and to define its meaning in different connections. A number of cases are cited by appellant in which it has been decided that petroleum and natural gas are minerals. Of the fact that under the broad division of all matter into the three classes of animal, vegetable and mineral, petroleum and gas are minerals, there has never been any room for question, and even under some more restricted classifications the same result may be reached. But, on the other hand, it has also been held that in other connections they are not included under that term. There is no discrepancy in the cases. The variations in the scope of the word arise from the connection and application in which it is used.

The crucial question here, as in all contracts, is what was the sense in which the parties used the word. Mineral is not per se a term of art or of trade, but of general language, and

presumably is intended in the ordinary popular sense which it bears among English speaking people. It may in any particular case have a different meaning, more extensive or more restricted, but such different meaning should clearly appear as intended by the parties. A very recent discussion of the subject was had in Hendler v. Lehigh Valley R. R. Co., 209 Pa. 256, where it was shown that while the word mineral has a very broad meaning, already alluded to, and also a more restricted scientific use, it has also a commercial sense in which it is most commonly used in conveyances and leases of land, and in which it may be presumed to be used in such instruments. In that sense it may include any inorganic substance found in nature having sufficient value separated from its situs as part of the earth to be mined, quarried or dug for its own sake or its own specific uses. But, though it may include all such substances, it does not necessarily do so. Appellant cites the case as authority for the view that whatever comes within the terms of that description must necessarily be included under the word mineral. But this is an untenable inference. That decision announced no new principle, nor any departure from the line of previous decisions. As already said there is no discrepancy in the cases. The cardinal test of the meaning of any word in any particular case is the intent of the parties using it, and all that Hendler v. R. R. Co. did was to apply that test to the word mineral in the deeds on which the case turned. The substance there in question was sand, and it was shown that it might or might not be within the definition of mineral in the commercial sense, according to the circumstances and the intent of the parties.

In the present case the question arises in respect to natural gas, the plaintiff claiming that it was included in the reservation of " the mineral underlying " the land conveyed. Certainly such gas is a mineral in the broadest sense of the term, but no evidence was given or offered to show that the parties so understood or intended the word mineral, or even that it had acquired a usage in conveyancing which would include gas. In Dunham v. Kirkpatrick, 101 Pa. 36, it was expressly held that petroleum was not included in a reservation of " all minerals," the court saying, " In popular estimation petroleum is not regarded as a mineral substance, and can only be so classified

in the most general or scientific sense. How, then, did the parties to the contract think and write? As scientists, or as business men, using the language and governed by the ideas of everyday life?" It was held, therefore, that petroleum was not within the intent of the parties in reserving the minerals. And, a fortiori, natural gas would not be so included. This decision was part of the law of the state when the deeds in question were made, and to some extent at least, as was said by the learned judge below, it had become a rule of property on which many titles in western Pennsylvania rested. To take any case out of its operation the evidence should be clear and convincing that the parties used the words in a different sense. The only effort of the appellants in that direction was apparently based on the view of Hendler v. R. R. Co., already referred to, that any substance mined or extracted from the land for its own sake is necessarily included in the word mineral. Under this view offers were made to show that at the date of the deeds the land in that vicinity was already being developed for natural gas, which was known as a marketable commodity. These offers, however, even if proved, were not evidence that the parties used the term mineral in the sense contended for. They could only be ground for inference that the parties might have so intended, while on the other hand the offers themselves implied that the including of gas under the term mineral would be a new use of the term, and the inference would be strong that if the parties intended to include gas they would have said so expressly. The offers, therefore, were properly excluded.

Judgment affirmed.