# Armstrong v. Black Fox Mining and Development Corp.

*Kenneth G. Valasek,* for plaintiffs.
*Edward J. Steiner,* for defendant.
*James G. Callas* and *James H. Owen,* for additional defendants.

HOUSE, *P.J.,* September 9, 1980—Plaintiffs bring this motion for summary judgment on the issue of liability against original defendant, Black Fox Mining and Development Corporation (Black Fox). Plaintiffs contend the record establishes the

liability in trespass of Black Fox for the mining, removal and sale of coal allegedly owned by plaintiffs and located beneath two adjacent parcels of land in this county.

Plaintiff Clyde W. Armstrong is the trustee of the John I. Gearhart Memorial Fund, a trust, which is the assignee of all rights, titles and interests, including choses in action, in the corporate assets owned or held by the Monterey Colliery Company (Monterey) as of September 4, 1975, the date of its dissolution. Plaintiff J. C. Forrest, Jr. is the grantee of certain real property rights conveyed by Monterey. All rights asserted by plaintiffs herein are those acquired in the above-mentioned transfers from Monterey.

Defendant Black Fox has joined two sets of additional defendants. Lizzie A. Reiter, Harriet E. Reiter and Cora Reiter Clark (Reiters) are the record surface owners of one of the tracts mined by Black Fox of approximately 54 acres. Arthur and Nancy Duppstadt (Duppstadts) are the record surface owners of the other tract of approximately 94 acres. Black Fox apparently entered into strip-mining leases with these two sets of additional defendant landowners prior to commencing mining operations.

Plaintiffs make their claim on the basis of facts established by the record. Plaintiffs assert that their title to the coal dates back to a severance of title to the coal from title to the surface of each tract in and around 1903. Prior to that time both surface and coal rights to the 94 acre tract were apparently in Jacob and Mary Wagner. By deed dated April 9, 1903 the Wagners conveyed "All the coal of whatever kind lying and being in and under" said 94 acre tract to D. L. Taylor and Sylvester Truman.

Around the same time the surface and coal in the 54 acre tract was apparently owned by George Wagner and others who in 1903 severed title and conveyed "All the coal of whatever kind lying and being in and under" said 54 acre tract to Conrad Wagner. By deed dated April 21, 1903 Conrad Wagner conveyed the coal (excepting the Canal (sic) coal) to D. L. Taylor and Sylvester Truman.

Taylor and Truman, then owners of the coal under both tracts, conveyed both tracts of coal to George Henry et al. by deed dated February 5, 1905. George Henry et al. conveyed these interests by deed dated January 28, 1919 to Monterey which held title until the above-mentioned transfers to plaintiffs.

The ownership of the surface of the 94 acre tract was conveyed by deed dated February 15, 1908 from Jacob and Mary Wagner to Gottliebe Reiter, excepting and reserving the coal conveyed to Taylor and Truman. Gottliebe Reiter et ux. by deed dated February 27, 1948 conveyed the same to Elizabeth Reiter, Cora Reiter Clark and John Reiter. As of 1972 and 1973 the surface of the 94 acre tract was owned by defendants Lizzie Reiter, Cora Reiter Clark and Harriet Reiter.

The surface ownership to the 54 acre tract apparently remained in Conrad Wagner and was sold for delinquent taxes by the Armstrong County Tax Claim Bureau in the name of Conrad Wagner Heirs. The conveyance by deed dated November 19, 1963 was to defendants Arthur and Nancy Duppstadt, who remained owners of the surface in 1972 and 1973.

These facts are established by allegations made in the new matter of defendant Black Fox and by plaintiffs' answer to new matter and plaintiffs' request for admissions of fact.

As of the time of the mining, plaintiffs allege the title to the coal under both tracts was in Monterey and the Reiters and Duppstadts held title only to the surface of their respective tracts.

Defendant Black Fox raises two arguments against this conclusion. The primary argument is that at the time the title to the coal was severed from the title to the surface (in and around 1903), the only established method of mining coal was deep-mining. Black Fox argues that the only coal that the parties could possibly have intended to convey was that coal that could then be removed by deep-mining. Therefore, the title to the coal removable only by strip mining remained in the grantors and was conveyed with the surface to the additional defendants.

Black Fox cites three cases to support this position. One of the cases, Highland v. Com., 400 Pa. 261, 161 A. 2d 390 (1960), does not apply legally or factually. The other cases, Rochez Bros., Inc. v. Duricka, 374 Pa. 262, 97 A. 2d 825 (1953), and Com. v. Fitzmartin, 376 Pa. 390, 102 A. 2d 893 (1954), which reach arguably inconsistent results, likewise do not apply to this case. In Rochez and Fitzmartin the issues were whether a deed conveying coal and the right to enter upon the land to mine the coal, made at a time when deep-mining was the only known method of mining, also granted the right to enter upon the land to strip-mine. *Ownership* of the coal was not an issue in either case. Here, however, defendant contends that a conveyance of "All the coal of whatever kind" made at a time when only deep-mining was known conveyed only that coal capable of being deep-mined and did not convey coal capable of being strip-mined.

Defendant has not cited, nor has this court dis-

covered, any cases to support this argument. It may be true that Monterey and/or plaintiffs could not have entered upon the land and removed the coal by strip-mining without the permission of the owners of the surface, but this does not affect their ownership of the coal. (Additionally, as noted by the Supreme Court in Stewart v. Chernicky, 439 Pa. 43, 50, fn.7, 266 A. 2d 259, 263, fn.7 (1970), strip-mining was not unknown in 1903, but apparently was not then well established as a method of mining.)

The deeds quoted above clearly grant "All the coal" underlying the lands in question. Nothing indicates that the grantors intended to *convey* anything less or that the grantees bargained for anything less. The fact that a 1903 grant of coal plus the right to "mine" it may not have conferred strip-mining rights is due to the awareness of courts to the particularly destructive and disruptive nature of strip-mining. Courts have frequently refused to force a surface owner (or his grantees) who intended to grant only the right to do the minimal surface damage needed to deep-mine, while retaining the right to surface support, to have the surface destroyed by strip-mining. See Rochez Bros., Inc. v. Duricka, supra.

The right of removal is distinct from title so that a limitation on the right of removal does not destroy title: Union Trust Co. of Pittsburgh v. Bellman, 300 Pa. 234, 150 Atl. 632 (1930). The right of removal of coal is a property right or interest in land, even if there is no specific name for this right: Schuster v. Pennsylvania Turnpike Commission, 395 Pa. 441, 149 A. 2d 447 (1959).

As to the question of title, however, no unanticipated destruction of the interest retained by the

grantor results from an interpretation of "All the coal" to mean just that. The grant being unambiguous and defendant not having pointed out any evidence of intention to the contrary, it is clear the deeds in question conveyed title to all the coal, including that capable of being strip-mined.

Black Fox's second argument as to title relates only to the 54 acre tract. In its new matter, Black Fox alleged that the coal ownership to this tract was not separately assessed for taxation from the surface and thus was sold with the surface by the Tax Claim Bureau to the Duppstadts. Plaintiffs denied the coal was not separately assessed and further answered that the tax sale could not have conveyed the coal since that was not owned by the prior owners in whose name the sale for delinquent taxes was made.

The question of whether the coal was separately assessed does not resolve the question of title. Even if the coal were not separately assessed, as Black Fox alleges, this does not in any way vest title in the Duppstadts. Rights to minerals, including coal rights, are separate estates and may be assessed and taxed separately from the surface rights: Sanderson v. Scranton, 105 Pa. 469 (1884). A tax sale for delinquent taxes conveys only that estate owned by the titleholder and covered by the assessment: Miller v. McCullough, 104 Pa. 624 (1884); Brundred v. Egbert, 164 Pa. 615, 30 Atl. 503 (1894).

If the coal rights in the 54 acre tract were not separately assessed, this is a matter between the taxing authorities and the owner of the coal estate. A purchaser at a tax sale of the surface estate would not be able to rely on this to claim he purchased the coal estate as well. See New York St. Nat. Gas Corp. v. Swan-Finch Gas Dev. Corp., 173 F. Supp. 184

(W.D. Pa. 1959), aff'd 278 F. 2d 577 (3d Cir. 1960). Monterey's title to the coal under the 54 acre tract was separate and distinct from that to the surface at the time of the tax sale. As established by the record, that title, as well as the title to the 94 acre tract, was valid and complete for the purposes of this action.

Having established the title of Monterey to the coal property, plaintiffs point to the record to establish that Black Fox entered upon the land, mined and sold the coal, pursuant to leases with the Reiters and Duppstadts. Black Fox does not deny this.

Black Fox nonetheless seeks to avoid liability by arguing that the doctrine of unjust enrichment requires that plaintiffs recover from Black Fox's lessors, the Reiters and Duppstadts, and not from Black Fox. While plaintiffs may or may not be able to recover from the lessors, unjust enrichment does not provide a defense to the claims brought herein. Black Fox mined and sold coal belonging to Monterey. For this it is liable in trespass and Monterey's claim against Black Fox is complete. That Black Fox leased the coal from lessors who did not own the coal and paid said lessors substantial sums of money is not a defense to the true owners' claim against Black Fox.

The owner of coal in situations such as this is not required to sue the lessor. In fact, the liability of the lessors to the true owner for trespass damages is not automatic, but depends on whether the lessor participated in the mining: Greek Catholic Congregation of Olyphant Boro. v. Plummer, 338 Pa. 373, 12 A. 2d 435 (1940).

Black Fox raises one final issue concerning to whom it is liable. The trespass took place while Monterey was the titleholder of the coal. The latest

mining alleged by plaintiffs took place in August, 1973. Monterey transferred certain coal lands and related rights, including the coal lands in question here, to plaintiff Forrest on December 21, 1973.

Monterey assigned all rights, including choses in actions, to all its assets to the John I. Gearhart Memorial Fund on September 2, 1975. Said fund is represented by its trustee, plaintiff Clyde W. Armstrong.

In its brief in opposition to this motion, Black Fox points out that although the original motion for summary judgment was requested in favor of both plaintiffs, the brief in support of that motion argues only for a finding in favor of plaintiff Armstrong. Also, plaintiffs' counsel cites authority for the proposition that a corporation may assign claims to a third party, who may enforce that claim even after the corporation ceased to do business.

The assignment of a chose in action entitled Armstrong to sue. Forrest, as grantee of the coal rights, is not entitled to sue. The right to sue for trespass to land is personal to the owner when the injury occurred and does not pass by deed or conveyance: McFadden v. Johnson, 72 Pa. 335 (1873). Thus only plaintiff Armstrong is entitled to summary judgment in his favor. Additionally, as requested by Black Fox in its brief, this court is empowered to and will enter summary judgment against plaintiff Forrest as to all defendants since Forrest has no cause of action in the circumstances.

## ORDER

And now, September 9, 1980, after the submission of briefs and oral arguments and for the reasons detailed in the annexed opinion, there being no

genuine issues of fact, it is hereby ordered, adjudged and decreed that the motion of plaintiff Clyde W. Armstrong, Trustee of John I. Gearhart Memorial Fund, a trust, for summary judgment against defendant Black Fox Mining and Development Corporation on the issue of liability only is granted, and judgment is hereby entered accordingly. Additionally, summary judgment on the issue of liability is hereby granted in favor of all defendants and against plaintiff J. C. Forrest, Jr.