# Ballantine's Appeal.

T. held real estate in fee in trust for his children or the survivors at his death. He had nine children, two died leaving issue, he then died, and one-seventh passed to each surviving child. Under the belief amongst the children that the issue of the deceased children took their parents' shares, D., one of the children, conveyed to B. one-ninth of a portion of the trust estate, describing the portion, "being the same premises of which the late T. died seised and from whom D. inherited as one of the heirs at law of said T., also all the right, &c., of said D. of, &c., all the real estate of his late father T. to which he is in any manner entitled and wheresoever situate * * * to have and to hold the said undivided one-ninth part of said described land, &c., hereby granted, &c., or intended so to be," &c. *Held*, that only one-ninth passed to B.

November 21st 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the District Court of *Allegheny county :* In Equity : No. 209, to October and November Term 1870.

The proceedings in this case commenced May 9th 1868, by bill for partition by Addison Reno and Hannah his wife against Nathaniel Ballantine, David J. Perkins and others.

The land of which partition was demanded was situate in Chartiers township, Allegheny county, and was designated in a diagram accompanying the bill as four adjoining lots, marked A, B, C and D. The court confirming the report of the master, decreed (amongst other things) that David J. Perkins, a defendant, was "entitled to one undivided seventh part of B and two-ninths of one undivided seventh part of C." Ballantine claimed that Perkins was not entitled to any part of those lots, but that they should have been assigned to himself. The appeal in this case is by Ballantine from that part of the decree. The dispute is confined to lots B and C, although the other lots are referred to in the case.

By deeds from Michael Fitzgerald and Charles Quigley, dated

in 1834, 1835, 1836 and 1842, B, C and D had been conveyed in fee to Thomas Perkins the elder, each lot being under a trust as follows (with an exception as to D hereafter mentioned) :—

" *In trust, nevertheless,* to pay over the net proceeds of the rents, &c., thereof, received by him from time to time, in equal portions (after deducting therefrom all the expenses he may deem proper to incur in making improvements and repairs on the said premises) to and between *his children,* James Perkins, grandson of said Michael Fitzgerald, Sarah Perkins, Eliza Perkins, William Perkins, Harriet Perkins and Thomas Perkins, *or the survivor or survivors of them,* and also amongst any *other children* of said Thomas Perkins and Rachel his wife, the daughter of said Michael, that may hereafter be born; and also to grant, bargain and sell said tract or piece of land in fee simple, or for any lesser estate, at such time as he may deem most expedient, and for such price and to such person as he may think proper; and to account for, pay over and divide the proceeds of the purchase-money to and amongst said children of said Thomas Perkins as are now living, or may hereafter be born, *or the survivor or survivors of them,* deducting therefrom any expenses incurred by him in improving or repairing the same, beyond the rents, issues and profits by him previously received from the same; with full power and authority to sell and convey the same absolutely, free and discharged of the trust hereby created on said land; and also with the same power and authority to receive the purchase-money arising from the same, and full acquittance to give to the purchaser therefor."

In the conveyance of D, after " survivor or survivors of them," the words, " and their lawful issue" occur.

In 1834 and 1849, Thomas Perkins the elder became the owner in fee in his own right of the lot designated as A, and also a lot in the town of McKeesport, in the same county.

After the conveyance in trust to T. Perkins the elder, he had two other children, Hannah, one of the plaintiffs, and David, one of the defendants.

On the 22d of September 1849, Thomas Perkins the elder, in consideration· of " one dollar and natural love and affection," made a deed to his son William, one of the cestui que trusts in fee, of lot B. Thomas Perkins died in 1855, intestate, leaving to survive him seven children, of whom David was one, and children of his two daughters Sarah and Eliza, named in the deeds of trust, they having died in his lifetime. In 1860, all William's interest in the trust land was sold by the sheriff under judgments against him and conveyed to Ballantine. The opinion of the parties interested was that the conveyance of B· by his father to William was a good execution of the trust, and that the remaining trust estate passed to the surviving children and the children of the deceased daughters in ninths. Such being the belief, on the

[Ballantine's Appeal.]

18th of November 1864 David J. Perkins made a conveyance to
Ballantine.    The parts of the deed material to the question are
as follows :—

" All the one undivided ninth part of that certain piece of land
situate, &c., containing 45 acres (describing it by adjoiners), and
being the same premises of which the late Thomas Perkins died
seised, and from whom David J. Perkins inherited as one of the
heirs at law of the said Thomas Perkins.    Also, all the right,
title, interest and claim of the said David, of, in and to all the
real estate late of his father, Thomas Perkins, deceased, to which
he is in any manner entitled and wheresoever the same may be
situate."    The habendum of this deed is " to have and to hold
the said undivided ninth part of said described land, heredita-
ments and premises hereby granted or mentioned, and intended
so to be, with the appertenances, unto the said party of the second
part, his heirs and assigns, to and for the only proper use and
behoof of the said party of the second part, his heirs and assigns
for ever."

In 1866, in actions of ejectment brought in the District Court
of Allegheny county, in relation to lot B, it was determined that
the deed from the father to William was not a due execution of
the trust, and that lots B and C, under the trust deeds, passed on
the father's death to his seven surviving children, and that the
children of those deceased took no interest in the lots as had been
before supposed.    From this it resulted that David's interest at
the time he made the deed to Ballantine was an undivided one-
seventh in each of lots B and C.

The bill set out the title of the parties under the trust deeds,
the conveyances above mentioned and others which do not bear
on the controversy; it also set out the respective rights of the
parties, and averred amongst other things, that David J. Perkins
was entitled to one-seventh part of nine sixty-third parts of lot
B and two-ninths of one-seventh or two sixty-third parts of lot
C.    The prayer was for partition of the lands according to the
rights set out in the bill, &c., and for the appointment of a master
and commissioners to make and report partition, valuation and
assessment of owelties, &c.

Ballantine answered admitting most of the averments of the
bill ; he denied that David J. Perkins was entitled to one-seventh of
lot B, or two sixty-thirds of lot C, and averred that he himself was
entitled to those parts together with other interests set out in the
bill as belonging to him.    He joined in the prayer for partition,
but prayed that it might be made according to the rights as above
averred by him.

A replication was filed, and S. H. Geyer, Esq., was appointed
master.

The contention before him was, whether the *description* in the

deed from David to Ballantine covered B, and whether it conveyed all David's interest in C, that is, nine sixty-third parts equal to one-seventh or seven sixty-third parts equal to one-ninth. The master, under objection by David, heard testimony on behalf of Ballantine from Robert Robb, Esq.   He said:—

"This deed of David J. Perkins to Nathaniel Ballantine was written in Robb & McConnell's office, by Eugene Snowden, who was a student of Robb & McConnell.   I think David J. Perkins and N. Ballantine were both in the office at the time the deed was written.   I know they were both there when the instructions were given to write the deed.   My impression is, and it is but an impression, that after the description of the property was blocked out in rough, Mr. Ballantine wanted it drawn so as to contain all the interest this young man had in the property, making some suggestions that there might be something outside of the one-ninth part to which it was alleged that this young man was entitled.   I think a deed had been written in our office for one of the heirs some time previous to the writing of this deed.   I refer to the deed from Charles P. Quigley to N. Ballantine.   Mr. Ballantine suggested that the Quigley deed was not quite strong enough, and he wanted the deed from David J. Perkins to cover everything, that is, all his interest as one of the heirs of Thomas Perkins.   I wrote off the clause in the deed, beginning with 'also,' after the description of the property in the deed, and instructed Mr. Snowden to incorporate that in the deed.   That clause was put in for the purpose of covering all his interest in the property as heir of his father, Thomas Perkins.   I could not state anything at all in regard to the habendum.   I have no recollection whatever of giving Mr. Snowden any instructions in regard to the habendum.   My impression is that both David J. Perkins and Mr. Ballantine were there when the deed was drawn, and remained there until it was drawn."

The master found that David's deed included lots A, C and D, but did not include B; he also found the deed by its terms conveyed only the one-ninth of C, and that the testimony of Mr. Robb was not sufficient to authorize a change.   He reported accordingly, and the report was confirmed by the court, as is above stated.

The errors assigned were:—

1. That the court had not jurisdiction in partition to settle the conflicting claims of Ballantine and David J. Perkins.

2. David J. Perkins not having asserted upon record any claim to the property in conflict with that set up by Ballantine, was not entitled to a decree against Ballantine.

3. The case having been referred without anything from David J. Perkins, the answer should have been taken as true.

4 and 5. The decree was error.

[Ballantine's Appeal.]

*T. MacConnell*, for appellant, as to the jurisdiction, cited Mc-Masters *v.* Carothers, 1 Barr 324; McMahan *v.* McMahan, 1 Harris 383; Law *v.* Patterson, 1 W. & S. 184; Clapp *v.* Broma-ghen, 9 Cow. 530; Morris *v.* Vanderen, 1 Dallas 67; 1 Kent's Com. 364; Brightly's Eq. § 169. The averments in the answer are to be taken as true: Buckenhoff *v.* Brown, 7 Johns. Ch. R. 217; Lanning *v.* Smith, 1 Pars. R. 17; Peirce *v.* West, 1 Peters C. C. R. 351; Story's Eq. Pl. 877; 2 Story's Eq. Jur. § 1528.

*J. Veech*, for appellee, as to jurisdiction, cited McCallum *v.* Germantown Water Co., 4 P. F. Smith 40. As to the construction of the deed: Co. Litt. 6 a; Shep. Touch. 475; 4 Kent's Com. 468; 2 Washb. on Real Prop. 641, 642.

The opinion of the court was delivered, May 18th 1871, by

READ, J.—This is a bill in equity filed by the plaintiffs against N. Ballantine and others, for the partition of certain real estate in Chartiers township, Allegheny county. N. Ballantine filed an answer admitting all the averments in the bill, with the exception of a part of those contained in the 15th and 18th paragraphs. On the 26th of September 1868, replication was filed, and on motion of plaintiffs' attorney by consent, S. H. Geyer, Esq., appointed master and examiner on the issues raised by the answer of N. Ballantine. On the hearing before the master, Robert Robb, Esq., was examined as a witness on behalf of Mr. Ballantine. The claim made by Mr. Ballantine in the 4th paragraph of his answer for the interest of Charles P. Quigley in the Mc-Keesport lot, was abandoned by his counsel, there being no evidence to support it.

The 2d and 3d paragraphs of the answer deny that David J. Perkins is the owner of one-seventh part of parcel B, and two-ninths of one-seventh (two sixty-third parts of parcel C), and aver that they were conveyed by said Perkins to said defendant Ballantine by deed dated the 18th of November 1864. This deed conveys in the premises and habendum one undivided ninth part of land, which the master finds is neither parcel B nor parcel C, and that the general language used does not in any manner describe the interest of Perkins in those parcels. The testimony of Mr. Robb, if admissible, proves no mistake in the deed to be corrected. The master therefore, for reasons in which we agree with the court below to be correct, finds that there is no conflict of title, but that the averments in the bill are true, and the statements in the 2d and 3d paragraphs of the answer entirely unsupported by the deed and other evidence produced on the part of the defendant Ballantine, and we therefore affirm the decree and dismiss the appeal at the costs of the appellant. In doing this, we express no opinion as to whether this is such a final

decree as that an appeal lies from it, the point not being made, and we presume it to be the object of both parties to have the question finally settled at this time.