# Miller *versus* McCullough et al.

1. A county treasurer's deed, for land sold for taxes as unseated land, is void, unless it is made to appear that the land therein described was assessed and taxed as unseated. Prima facie, the assessment as an official act determines the character of the land, but only prima facie; for if it be proved that the land was really seated, its sale as unseated is void for want of power in the treasurer to make it. And this, not only as against one claiming adversely to the deed, as former owner, but as against a mere intruder.

2. Where, in an action of ejectment by one claiming under a treasurer's tax deed, there is a question about the validity of the deed, because of a doubt in regard to the identity of the land described in the writ,

[Miller *v.* McCullough.]

and that set out in the deed; or because it is uncertain whether the land was really assessed as unseated, or whether it was in fact unseated; these questions are properly for the jury and not for the court. And this is true, although the defendant is a mere intruder, not having even color of title.

3. An "intruder" is one who enters upon land without either right of possession or color of title.

4. Under the facts in this case, *held*, that the defendants were not intruders.

November 12th, 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:* Of October Term 1883, No. 215.

This was an action of ejectment brought in 1881 by Charles C. Miller against Michael McCullough, Jr., and the Pittsburgh and Western Railroad Company, for a piece of land containing about four acres, situate in the Eighth ward of Allegheny city (formerly Duquesne borough), on the bank of the Allegheny river.

Both parties claimed through one Benjamin Herr. The plaintiff's abstract after deducing title from the Commonwealth to the said Herr and reciting his death, set out (3), his last will and testament proved May 27th 1846; (4) a deed of perpetual lease from his heirs to S. R. Morrison, dated April 1st 1847, reserving an annual ground rent of $25; (5) a deed from S. R. Morrison to B. P. H. Morrison, dated June 30th 1849; (6) a deed from B. P. H. Morrison to Zebulon Kinsey, dated December 26th 1849; (7) a treasurer's tax deed by H. S. Fleming, treasurer of Allegheny county, to Joseph Spencer, dated August 8th 1854, conveying land alleged to be the same as that described in the precipe, and reciting that the same had "been surveyed to Zebulon Kinsey and returned in his name as unseated," and that "divers taxes remained thereon as unpaid;" (8) a deed from Joseph Spencer to Wm. C. Miller, plaintiff's father, dated June 11th 1856; (9 and 10) The death of Wm. C. Miller, intestate, and the conveyance of the shares of the other heirs to the plaintiff.

At the trial, before EWING, P. J., the plaintiff offered the above conveyances in evidence, as well as proof of the other matters mentioned in the abstract.

The defendants, in their abstract, as well as at the trial, admitted the title of Benjamin Herr; but they contended that in 1836, before his death, the said Benjamin Herr had conveyed to S. R. Morrison by a ground-rent deed, which was put in evidence, two pieces of land, one on an island and the other on

the main shore of the Allegheny River upon one of which there was a saw mill, and that the deed gave certain water power, and privileges as to tying and piling lumber and erecting dams and wharves, which privileges and grants necessarily included the use of the land in dispute, which adjoined the said two pieces.

That in 1847, after the death of Benjamin Herr, his heirs again conveyed the land in question to S. R. Morrison as mentioned in the plaintiff's abstract and that the said S. R. Morrison and his grantees B. P. H. Morrison and Zebulon Kinsey used the three pieces of land together, for the purposes of the mill, until the tax sale of 1854. That the two pieces mentioned in the ground-rent deed of 1836 and the wharf and water privileges were by sundry conveyances at last vested in one Charles Harlan whose interest therein was sold by the heirs of Benjamin Herr for arrears of ground rent, and by them bought in.

That the land in suit was sold for taxes in 1854 as claimed by the plaintiff, but that previous to said sale, under a covenant in the deed of 1847, the heirs of Benjamin Herr had a right to re-enter and re-possess themselves of the premises upon default in the payment of the ground rent for two years, and it appearing that there had been such default the jury were warranted in finding that said heirs had so re-entered ; and further that the heirs of Benjamin Herr being so in possession of all three pieces of land embraced in the mill property, conveyed the same, by deed of perpetual lease, dated March 23d 1859, to Michael McCullough, Jr., who in 1879 conveyed to the Pittsburgh & Western Railroad company, which had constructed tracks thereon.

The defendants also introduced evidence to show that since 1859 they had paid the rent and taxes on the land, while William C. Miller had paid nothing, and that the latter never took possession of the land and neither he nor his heirs exercised any ownership over it or claimed title to it for more than twenty-five years before the bringing of this suit, during which time McCullough was in undisputed, open and exclusive possession thereof.

The deed of perpetual lease of March 23d 1859, by the heirs of Benjamin Herr to the defendant McCullough, contained in the habendum the following clause :

" Said rent of $125, includes also the ground-rent for the long strip above the mill and leased also to S. R. Morrison, and now owned by Wm. C. Miller by transfer of treasurer's deed of Allegheny county and recorded in deed book, vol. 139, 19."

This clause referred to the strip of land in dispute, and, the plaintiffs claimed that it was an acknowledgment on the part

of the Herr heirs and of McCullough, in 1859, that the title to said strip was then in Miller.

In order further to dispute the defendant's claim of title, the plaintiff offered in evidence the assessors' books containing the record of the assessments of the lands in suit for the years 1859 and 1864 inclusive, to show that the land had been assessed to Wm. C. Miller during those years; and also proof, by a county commissioner of the contents of said books for the years 1852 and 1853 (the books themselves having been destroyed) upon which the sale of the land as "unseated" was based; and also the treasurer's deed of 1854 to Spencer.

The description contained in the alleged assessment of the land and in the said treasurer's deed, was as follows: "a strip of land near Henry Herr's" or "a strip of land adjoining Henry Herr's, six hundred feet;" thus leaving it in doubt whether the land conveyed by the treasurer's tax deed, and that mentioned in the writ, was the same.

The plaintiff submitted, inter alia, the following points:

(1) "The treasurer's deed and assessment books offered in evidence, vested in Joseph Spencer the legal title to the land in dispute, if the jury are satisfied from all the evidence that the land in dispute and described in the plaintiff's writ is the same piece of land which was assessed to and sold as the property of Zebulon Kinsey." Refused. Exception. (First assignment of error.)

(2) "That if the jury are satisfied from all the evidence that the land in dispute is the same which was assessed to and sold by the treasurer in 1854 as the property of Zebulon Kinsey, and that the treasurer's deed of 1854 applies to and covers the land in dispute, the treasurer's sale and deed vested the title to said land in Joseph Spencer, the treasurer's vendee. Refused. Exception. (Second assignment of error.)

The court in its general charge instructed the jury, inter alia, as follows:

"To summarize then, the three questions are, first, the identity of the land assessed and sold with that described in the writ; second, as to whether or not, as a matter of fact, it was assessed as unseated land, and, third, whether or not, as a matter of fact, it was unseated at the time. If you decide those three questions in the affirmative, you will find in favor of the plaintiff. If you do not so decide, but find that the land described in the writ is not identical with the land assessed and sold, or that it was not assessed as unseated land, or if assessed as unseated it was, in fact, seated, you will find for the defendants." (Sixth assignment of error.)

Verdict and judgment for the defendants, whereupon the

plaintiff took this writ assigning for error the answers to his points, and that part of the charge above cited.

*W. S. Purviance* (with whom was *Walter Lyon*), for plaintiff in error.—The deed of 1859 did not pretend to put McCullough in possession of the land in dispute, but expressly negatived such an idea; and the arrears of ground-rent if there were any before 1859, were barred by the statute, long before claim of title was made on account of them by virtue of the provisions of the deed of 1847. McCullough was a mere intruder and the treasurer's tax deed conferred a valid title on Spencer as against him. Although as against a former owner a tax-title claimant must show that the land was both unseated and assessed as such, yet, as against an intruder, attempting to defend a possession into which he has intruded himself, a treasurer's deed is a sufficient title without proof of prerequisites: Foster *v.* McDivit, 9 Watts 344; Troutman *v.* May, 9 Casey 462; Dikeman *v.* Parrish, 6 Barr 222; Shearer *v.* Woodburn, 10 Barr 512. The deed of 1859 contained an admission of title, to wit, that the land in dispute was then owned by Wm. C. Miller, made by Michael McCullough and the heirs of Benj. Herr, solemnly over their hands and seals in a document or paper to which Miller was, though not strictly speaking a party, an attesting witness, and which had been written by him; and after this admission he paid taxes on it up till his death. Now in this case McCullough is defending on grounds just the opposite to his former admission, viz: that in 1859 Wm. C. Miller did not own the land by virtue of the treasurer's deed referred to, but that one Zebulon Kinsey really owned it; and the maxim, *allegans contraria non est audiendus*, certainly applies: Miller *v.* Springer, 20 P. F. Smith 275.

*A. M. Brown* (with whom were *John H. Kerr* and *Marshall Brown*), for the defendants in error.—The testimony offered by the defendants abundantly proved that the property in question was neither vacant nor unseated, and the jury found the fact accordingly. An assessment of the land as unseated, is only prima facie evidence of the fact, and if, as in this case, the fact is found otherwise, the sale of the land as unseated is absolutely void. The question was properly left to the jury: Laird *v.* Hiester, 12 Har. 453; Breisch *v.* Coxe, 31 P. F. S. 336; Cuttle *v.* Brockway, 8 Casey 45. Ever since the Act of 1815, it has been uniformly held that all the essential prerequisites to a tax sale, must be complied with: McReynolds *v.* Longenberger, 7 Smith 27; Troutman *v.* May, 9 Casey 462; Laird *v.* Hiester, 12 Harris 453; Jenks *v.* Wright, 11 Smith 410; McCall *v.* Lorimer, 4 Watts 353; Stewart *v.* Shoenfelt, 13 S. & R.

[Miller v. McCullough.]

372; Miller v. Hale, 2 Casey 432; Bratton v. Mitchhell, 1 W. & S. 310. No case has been cited by the plaintiff to show that a sale of seated lands, as unseated is of any avail. The defendants were not intruders, but claimed at least under color of title: McCall v. Neely, 3 Watts 69; Steiner v. Coxe, 4 Barr 13.

Mr. Justice GORDON delivered the opinion of the court, January 7th 1884.

The errors assigned in this case are, in number, eight, in substance but two. They are: (1) That the court below refused to say to the jury, that the treasurer's deed and books of assessment, offered in evidence, vested in Joseph Spencer the legal title to the land in dispute. (2) That there were left to the jury the three following questions: first, the identity of the land assessed and sold with that described in the writ; second, whether or not, as a matter of fact, it was assessed as unseated; and third, whether or not this land was actually unseated at the time of the assessment? I presume the assessments spoken of in the first assignment must have reference to those made after the time of the treasurer's sale—for, as I understand the evidence, the books containing the assessments on which that sale was made were lost, and that of their contents there was proof made by one of the commissioners of Allegheny county. Such being the case, the authority of the treasurer to sell rested in parol, or on secondary evidence, and we cannot see how, under such circumstances, the court could undertake to say that the treasurer's deed alone vested the legal title to the land in dispute in the vendor of the plaintiff. It further seems to us too clear for dispute, that where there is a question as to the identity of the land described in the writ with that in the deed, it is one for the determination of the jury and not for the court. Then again, the treasurer's deed was good for nothing, unless it was somehow made apparent that the land therein described was assessed and taxed as unseated. Prima facie, the assessment, as an official act, would determine the character of the land, but only prima facie, for if it were proven that, in fact, the land was seated, its sale as unseated would be void for want of power in the treasurer to make it: Laird v. Hiester, 12 Har. 453; Breisch v. Coxe, 31 P. F. S. 336. In such case, the second section of the Act of March 13th 1850 does not apply. The question before us is not one of irregularity, but of power. Given the jurisdiction of the treasurer to sell, and all irregularities, whether in the assessment or sale, are of no account, but without jurisdiction that officer has no more power to dispose of lands, seated or unseated, than has a private citizen; hence, his deed is not merely voidable but absolutely void, unless his power to make

it is affirmatively shown. It is here, however, contended, on the authority of Foster *v.* McDivit, 9 Watts 344, and Troutman *v.* May, 9 Ca. 461, that McCullough and his vendees are mere intruders, and that as to them the treasurer's deed was conclusive. Admitting the premise of this proposition, and the conclusion follows as of course; that is, if there was a valid treasurer's deed. But as the jury have found that the land was, in fact, not unseated, or not assessed as such, the alleged deed was no more than so much waste paper; it conferred neither right nor title on Spencer and his vendee, and as they had neither actual nor constructive possession, how could the defendants intrude upon their right? It is true, that in the cases cited, it would seem, at first glance, that it was intended to be affirmed that the deed itself was prima facie evidence of the treasurer's power to make it; but as the facts of those cases warranted no such conclusion, it may well be doubted whether such a doctrine were intended. Be this, however, as it may, it was certainly not designed, in the face of the Act of Assembly, to establish the doctrine that the effect of such a deed could not be defeated, even by an intruder, by showing affirmatively that the land was not unseated. One might as well say, that a deed, purporting to have been executed by an attorney in fact, was good and valid, not only without an exhibition of his warrant, but with the affirmative proof that his act was without authority. It is a sure thing that the treasurer's power to sell the land in controversy is found, if at all, in the statute, and if under that statute he is found to have no power, his deed to Spencer was worthless, and gave him no right in the land as against any one, owner or intruder, for in such case the title never passed out of Herr's heirs, and if there was an intrusion, it was an intrusion upon their right, and not upon that of Spencer.

We cannot, however, regard Michael McCullough as a mere intruder, for an intruder is one who enters upon land without either right of possession or color of title. But certainly the lease of Herr's heirs, the ancestor of whom formerly owned the land in controversy, conferred at least a color of title on McCullough. Had they entered, they could not have been regarded as mere intruders; how then can their lessee who enters in their right? Clearly, as against them the lease was good, and if they cannot controvert McCullough's right, no one else can. Nor can we understand why his title or right to the possession of the premises would not be good as against the Stephen Morrison lease of April 1st 1847. Of the conditions of that lease there was such a breach as warranted an entry by the lessors, and we need hardly say that an entry by McCullough, their lessee, was, for all legal purposes, an entry by them-

[Bardsley v. Lysle.]

selves, so that in this manner, if not by the lapse of time, the rights of Morrison reverted to them, and passed to their lessee. There was thus in McCullough, not only color of title, but also an actual right of possession as against every one except him who could show a better title.

The recitation in the lease of the 23d of March 1859, describing the strip in controversy as " now owned by William C. Miller, by transfer of a deed from the treasurer of Allegheny county," is certainly a curiosity. In effect, the lessors admit that they have no title to the land they undertake to lease. It is not hard, in view of the evidence, to guess how this happened, but it matters nothing in this controversy. The lessors thereby divested themselves of nothing which they previously owned. As between them and McCullough, it was but part of the description of the premises, or, at most, notice to him of the alleged title of Miller. As to Miller, it amounted to nothing one way or the other. He cannot use it by way of estoppel, for he was neither party nor privy to the lease, nor was he in any way injured or compromised by the recitation, and one of these things must occur in order to give effect to an estoppel. On the whole, therefore, we cannot see that the plaintiff has any good reason to complain. His case, in the court below, was tried with rare skill, and the learned judge certainly did him no wrong in the manner in which he submitted it to the jury.

The judgment is affirmed.