# New Shawmut Mining Co. v. Gordon

*Sebastian C. Pugliese, Dan P. Arnold, Belin & Belin,* for plaintiffs.

*Harold J. Boulton,* for defendants.

*William H. Eckert, Cloyd R. Mellot, Eckert, Seamans & Cherin, Bell, Silberblatt & Swoope, G. Kirby Herrington* and *James S. Berger,* for intervening defendants.

MORRIS, P. J., (Fifty-fourth Judicial District, Specially Presiding), November 8, 1963. — This action is one in ejectment brought by plaintiffs against defendants in an effort to try title to the gas underlying warrants 2000 and 2001 in Huston Township, Clearfield County, Pa. New York State Natural Gas Corporation and Godfrey L. Cabot, Inc., intervened as defendants in this proceeding. Cabot is the lessee of the gas in warrants 2000 and 2001 under leases executed by defendants. New York State Natural Gas Corporation is the assignee of these leases and, pursuant to these assignments, has drilled six gas wells

on warrant 2000 and six gas wells on warrant 2001. The first of these wells was completed on February 20, 1957.

This action was commenced as an action to quiet title; however, upon preliminary objections filed by defendants, this court ordered plaintiffs to amend the form of action to one in ejectment, since plaintiffs were not in possession of the estate in dispute. See orders of July 15, 1960, and November 30, 1960. Plaintiffs complied with the second order and so amended the form of action on December 14, 1960.

The law is well settled in Pennsylvania that, in an action of ejectment, plaintiff must recover on the strength of his own title and not on the weakness of defendant's title: Artz v. Meister, 278 Pa. 583 (1924); Robinson v. Pierce, 278 Pa. 372 (1924); Schoch v. American International Corporation, 286 Pa. 181 (1926); Smith v. Miller, 289 Pa. 184 (1927); Parks v. Pennsylvania R. R. Co., 301 Pa. 475 (1930); Henry v. Grove, 356 Pa. 541 (1947); Blumner v. Metropolitan Life Ins. Co., 362 Pa. 7 (1949).

The common source of the title relied upon by the parties is the ownership of warrants 2000 and 2001 on and prior to April 5, 1887, in fee simple, by Benjamin C. Bowman and James H. Rowland.

On April 5, 1887, Bowman and Rowland made a deed to the Caledonia Coal Company, conveying,

"All the coal, coal oil, fire clay and other minerals of every kind and character, in upon and under" several tracts of land, among which were warrants 2000 and 2001.

This deed contained the following language:

". . . together with the right and privilege of entering upon said land and taking away said coal, coal oil, fire clay and other minerals of every kind and character and to erect such structures, ways, buildings, railways and shafts thereon both up and down,

to cut and fill the surface wheresoever needed for railways for such purposes to dig ditches and channels for waste waters and to do those and such other things thereon in such manner as may be necessary in the judgment of the Caledonia Coal Company to successfully mine and take away the said coal, coal oil, fire clay and other minerals or any of them from the lands aforesaid with the right to use such timber under ten inches in diameter at the butt as may be needed in mining operations".

It is the contention of plaintiffs that, even though no specific mention of gas is made anywhere in the deed, it was the intention of the grantors, Bowman and Rowland, to convey minerals in a broad sense of the word, to the extent that it would include the gas. In support of their theory, they have offered sundry and various deeds, records and the like, which, at the time of their offer, were severally objected to by defense counsel as being incompetent and immaterial to the issue. This court reserved its ruling thereon until this time in order to expedite the trial of this case and to give to plaintiffs every opportunity to present their theory in proof of their case.

A review of the exhibits introduced by plaintiffs and defendants indicates that the legal questions with respect to the gas under warrants 2000 and 2001 are identical. In most instances, the documents that are involved in the chain of title actually related to both warrants, and where this is not the case, there was always a document for warrant 2000 corresponding to the one for warrant 2001, and these corresponding documents were practically identical in language and form.

The title to the gas underlying warrant 2001 has been litigated previously, in an action brought by the New York State Natural Gas Corporation in the United States District Court for the Western District

of Pennsylvania, at civil action no. 15514. Defendants in that action were A. H. Reitz, Swan-Finch Gas Development Corporation, Rockton Drilling Corporation and Keta Gas and Oil Company, all parties in the same chain of title as plaintiffs in this proceeding. The court in that case held that the heirs of Cyrus Gordon, defendants in this proceeding, owned the gas estate underlying warrant 2001. The court (Willson, District Judge) further held that the New York State Natural Gas Corporation owned the only valid gas lease on warrant 2001 and had the sole right to produce gas from under said warrant. The findings, conclusions and opinion of the district court are reported in 173 F. Supp. 184. Many of those findings and conclusions are incorporated in the requests for findings of fact and conclusions of law submitted by the intervening defendants in this proceeding. This decision of the district court was affirmed, on appeal, by the Court of Appeals for the Third Circuit: 278 F. 2d 577.

As heretofore stated, plaintiffs contend that even though the deed from Bowman and Rowland to the Caledonia Coal Company does not mention gas, the granting clause therein reading, "All the coal, coal oil, fire clay and other minerals of every kind and character . . .", it was the intention of the grantors, Bowman and Rowland, to convey the gas.

The language above quoted has been construed by the Supreme Court of Pennsylvania in a long and consistent line of cases, beginning in 1882, not to include gas: Dunham v. Kirkpatrick, 101 Pa. 36 (1882); Silver v. Bush, 213 Pa. 195 (1906); Preston v. South Penn Oil Company, 238 Pa. 301 (1913); Bundy v. Myers, 372 Pa. 583 (1953); Highland v. Commonwealth, 400 Pa. 261 (1960).

That the word "minerals" does not include gas has become a rule of property in Pennsylvania, which is

not to be disturbed. To that effect, the Supreme Court, in the recent Bundy case, supra, said, at page 587:

"Dunham v. Kirkpatrick has now been the law of this State for seventy years and is still no less a rule of property which is not to be disturbed".

It was also held in the Bundy case that to take any case out of operation of the rule that the word "minerals" does not include gas requires evidence that is clear and convincing. So holding, the Supreme Court in the Bundy case quoted from Silver v. Bush, supra, as follows, page 586:

"To take any case out of its operation the evidence should be clear and convincing that the parties used the words in a different sense".

These cases, including the Bundy case, were again reviewed by the Supreme Court of Pennsylvania in Highland v. Commonwealth, supra, and the position taken in the Bundy case was steadfastly reaffirmed. Our Supreme Court there summarized the rule as follows: (400 Pa. at pages 276 and 277.)

"As a rule of property long recognized and relied upon, the Dunham rule binds and controls this situation: that the word 'minerals' appears in a grant, rather than an exception or a reservation, in nowise alters the rule. To rebut the presumption established in Dunham, supra, that natural gas or oil is not included within the word 'minerals' there must be clear and convincing evidence *that the parties to the conveyance* intended to include natural gas or oil within such word". (Italics supplied.)

Accordingly, the question presented to this court is whether plaintiffs have presented such clear and convincing evidence that Bowman, Rowland and Caledonia Coal Company used the word "minerals" in the deed of April 5, 1887, intending it to include natural gas.

(1) Plaintiffs, in support of their contention that

gas was conveyed by the deed dated April 5, 1887, from Bowman and Rowland to the Caledonia Coal Company, introduced into evidence the charter granted to the Caledonia Coal Company, referring particularly to the purpose clause in said instrument, reading as follows:

"That said corporation is formed for the purpose of mining, quarrying, excavating, boring for and otherwise producing coal, iron ore, lime Stone, and other minerals and Substances, the Manufacture of All Such products and of All Substances or Materials found in or upon any lands acquired by the Company, the transportation thereof to market and the sale thereof in crude or manufactured form, and to such extent as may be from time to time necessary or convenient for said purpose of acquiring, holding and disposing of real estate by sale, lease or otherwise, and of constructing and disposing of dwellings . . . and all kinds of buildings, erections, machinery and appliances and of acquiring, possessing and enjoying all the rights, powers, privileges and immunities conferred by the aforesaid Act of April 29, 1874, and the Supplement thereto, upon Corporations of the class mentioned in the Eighteenth Clause of the Second Section of said Act".

Rowland and Bowman were among the several, (18), incorporators of the Caledonia Coal Company. It further appears that in the issuance of stock, some paid for the same in cash while others paid for their stock on the basis that each acre of mineral land was to receive a $4.50 credit per acre in the value of the stock issued to them, a practice or procedure not unusual in transactions of this kind. Bowman and Rowland were among the latter group.

In the instances where the subscribers to the stock paid for their stock by conveying mineral lands only, to the company, the granting clause in the several deeds reads as follows:

"All the coal, coal oil, fire clay and other minerals of every kind and character . . ."

With reference to the charter, plaintiffs argue that the use of the words "boring for" and the reference to "crude form" show that Caledonia Coal Company was formed for the purpose of being in the oil and gas business and, therefore, the coal company acquired oil and gas from Bowman and Rowland in the April 5, 1887, deed.

With this, we cannot agree. Even if Caledonia Coal Company had been formed for the purpose of mining and producing oil and gas, it is certainly not clear and convincing evidence that Bowman and Rowland intended to convey gas and oil to the Caledonia Coal Company by the 1887 deed.

The words "boring for" and "crude" referred to by plaintiffs do not establish that there was any intent of any of the subscribers of Caledonia Coal Company that the company was to engage in the oil and gas business. All of these words have applicability to the clearly stated purposes set forth in the charter. "Boring" is done in connection with prospecting with production of coal, iron ore, limestone and various other minerals. The word "crude" has no more applicability to natural gas or oil than it has to coal, iron ore and limestone. We believe, and so conclude, that the word "crude" was used in the purpose clause of this charter as being synonymous with raw or natural state as contrasted to manufactured form. This is apparent from the language used in the charter.

The purpose clauses used in the charter of any corporation usually set forth specifically the business in which the company intends to engage, and broad general language is used to encompass additional possible purposes. If there was any intent that Caledonia Coal Company was to engage in the oil and gas business, specific reference to that purpose would have been

made in the charter so that there could be no question that such business was included within the charter of the company. Caledonia Coal Company, as its name implies, by the provisions in its charter, was formed for the purpose of mining and selling coal.

(2) In 1899, the company, because of financial difficulties, conveyed, by deed dated March 1, 1899, all its properties to four trustees for the purpose of liquidating its assets and paying its creditors. This deed conveyed all the lands of the company, some of which it owned in fee and other tracts or warrants wherein it owned the mineral estate only, among the latter being warrants 2000 and 2001.

By deed dated June 25, 1900, the liquidating trustees of Caledonia Coal Company conveyed to N. T. Arnold substantially all of the many properties owned by the company, in some of which, as before stated, the company owned the minerals only, and others of which had been owned by it in fee and which, therefore, would include the gas. As an example of those owned in fee, see parcels VI, IX, XIV, XVI and XVII in plaintiffs' exhibit 1. Plaintiffs, in their briefs and argument, place heavy stress on recitals contained near the end of this deed, following the descriptions of all the properties as supporting their position that gas was conveyed under all of the various tracts described in that deed.

We are not impressed with this argument. We believe the only natural conclusion is that this reference to gas near the end of that deed referred to the tracts which the Caledonia Coal Company had owned in fee, which obviously included the gas. That this is so is also confirmed by the fact that parcel XIII in said deed, which is the parcel that refers to warrants 2000 and 2001, uses the identical language of the 1887 Caledonia Coal deed from Bowman and Rowland and also refers to that 1887 deed for a description of

the premises being conveyed. Manifestly, this establishes an intention to convey only that interest acquired by Caledonia Coal Company from Bowman and Rowland by virtue of the 1887 deed.

It should be noted that the reference to natural gas in the recitals appearing at the end of the liquidating trustees' deed does not specifically make that reference applicable to any particular parcel of land. It is very important that that language be read exactly as written in the deed. The language recited, upon which plaintiffs rely, is as follows:

"It is the intention of the grantors herein to convey to the said N. T. Arnold all the land, coal, coal oil, fire clay, natural gas and other minerals and all rights *vested in said grantors under and by virtue of the deed hereinbefore recited, bearing date 1st, March, A. D. 1899, and recorded as described on the first page of this deed*". (Italics supplied.)

The only reasonable interpretation of this language is that the liquidating trustees intended to convey to Arnold all rights which they had in the property described in the deed to them. With respect to some tracts, those rights included the gas. This provision certainly does not say that the liquidating trustees were conveying the gas under all of those tracts. Rather, it says that they are conveying the gas where it is vested in them by virtue of the prior deed to them.

The prior deed referred to in this recital is the deed dated March 1, 1899, from H. Herbert Pigott and his wife, for himself and as trustee of the Caledonia Coal Company, to the liquidating trustees. From the recitals in this deed it is obvious that the grantees therein were to liquidate the property of the coal company and to distribute the proceeds thereof. This deed was intended to convey to the liquidating trustees all the property of the coal company, but no more. Con-

sequently, it is obvious that the trustees could convey nothing more than the coal company had.

The conveyancing language used in the Caledonia Coal Company trust deed to the liquidating trustees, with respect to warrants 2000 and 2001, is the same as that used in the 1887 Bowman and Rowland Coal deed and is as follows:

"All the coal, coal oil, fire clay and other minerals of every kind and character".

Nowhere in this deed to the liquidating trustees is there any reference to natural gas.

We can only conclude that the reason the reference to natural gas was included in the liquidating trustees' deed to Arnold was that the liquidating trustees realized that, since Caledonia Coal Company owned some of the parcels in fee, natural gas was thereby included in those parcels, and the mention of gas, therefore, relates only to those parcels. The rest of the recitals in the trustees' deed makes it clear that the intention of the trustees was simply to convey to Arnold the property which the liquidating trustees had received under the Caledonia Coal Company deed. This is the only reasonable interpretation of the recital contained in the liquidating trustees' deed.

Furthermore, this construction of the liquidating trustees' deed is the one which results from an application of the rules relating to the construction of deeds. Those rules were summarized by the Supreme Court, in Highland v. Commonwealth, supra, at page 283:

"In Brookbank v. Benedum-Trees Oil Company, 389 Pa. 151, 157, 131 A. 2d 103, we set forth certain rules applicable in the construction of deeds. As we said in Yuscavage v. Hamlin, 391 Pa. 13, 16, 137 A. 2d 242: 'Among such rules are those providing . . . (3) the language of the deed shall be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed' ".

Also, it has long been settled in Pennsylvania that general words contained in the appurtenance clause will not add to the property which is described in the granting clause of a deed: Young v. Coyle, 3 Penny-packer 284 (1884); Ballentine's Appeal, 67 Pa. 178 (1870).

Construing the liquidating trustees' deed in conformity with those rules results in the construction that no gas in warrants 2000 and 2001 was conveyed by that deed.

Again, the recital contained in the liquidating trustees' deed can have no other legal effect, since obviously the liquidating trustees could not convey to Arnold any property which they did not own, even if they attempted to do so in their deed.

After the sale by the liquidating trustees to N. T. Arnold (deed dated June 25, 1900), N. T. Arnold, in 1901, had those tracts located in Huston Township, being a portion of those conveyed to him by deed of liquidating trustees and theretofore assessed in the name of Caledonia Coal Company, transferred to "Arnold N. T." The assessor's record, under the heading, "Mineral land Trs. from Caledonia Coal C. C. Arnold N. T.," indicated or described the various tracts as some covering "surface", some a "fee" and some covering "minerals". It is to be noted that the last two tracts appearing on this list, warrants 5670 and 4265, were erroneously included in Huston Township, but this we will refer to later. At the end of the list of properties described in plaintiffs' exhibit 4, and upon which plaintiffs strongly rely, appears the following notation:

"the above ass. cover minerals coal oil & Gass & Mineing rites".

The "Mineral" assessment for warrants 2000 and 2001 started in 1889, the first triennial year after

the conveyance, on April 5, 1887, by Bowman and Rowland to the Caledonia Coal Company, and was in the name of the Caledonia Coal Company.

Prior to 1901, B. C. Bowman, or "B. C. Bowman and Co.", were assessed with the same warrant numbers and acreage as if in fee, except for the years 1895, 1898 and 1900 when it was described as "surface".

Plaintiffs contend that on June 9, 1902, N. T. Arnold purchased warrants 2000 and 2001, assessed in the name of Caledonia Coal Company, at a treasurer's tax sale for unpaid taxes for the year 1901. They contend that the assessment in 1901 was against the gas and that, therefore, Arnold acquired the gas in those warrants as a result of that sale.

Do the facts and the law applicable thereto support plaintiffs' conclusion?

It should be noted at this point that as to the remaining estate in warrants 2000 and 2001, after the conveyance of April 5, 1887, by Bowman and Rowland to the Caledonia Coal Company and, as heretofore stated, which was assessed in the name of "B. C. Bowman" or "B. C. Bowman and Co.", it was likewise sold for delinquent taxes for the years 1896 and 1897. The purchaser thereof was J. Roman Way.

The 1901 assessments against warrants 2000 and 2001, as they appear on the commissioners' land docket, are as follows:

| No. | Acres | Warrantees | Val. |
|---|---|---|---|
| 2000 | 1020 | J. Roman Way | |
| | | surf Robt Fox | 3060 |
| 2000 | 1020 | N. T. Arnold | |
| | | Min | 10200 |
| 2001 | 1089 | J. Roman Way | |
| | | Surf Robt Fox | 3267 |
| 2001 | 1039 | N. T. Arnold | |
| | | Min | 4356 |

An examination of the assessor's records for Huston Township shows that the *same estate* of N. T. Arnold in warrants 2000 and 2001 was referred to therein as was assessed by the commissioners, as reflected on the commissioners' land docket. The assessor's notes show that "2000 Min" and "2001 Min" were the entries first made against Caledonia Coal Company. There is a line through the entries against Caledonia Coal Company. Then, under the heading, "Mineral Land Trs. from Caledonia Coal C C Arnold N. T." appears "2000 Min" and "2001 Min". As stated before, some 51 tracts or warrants are included on both the Caledonia Coal Company list and the N. T. Arnold list. Each warrant listed has the notation "Mineral", "fee" or "surface" following.

As before stated, two warrants erroneously appear on the Arnold list for *Huston* Township that do not appear on the Caledonia list. These are warrants 5670 and 4265. They appear at the end of the Arnold list, and apparently are in a different handwriting from the other warrants contained in the Arnold list. The notation upon which plaintiffs rely follows the listing of these two warrants, 5670 and 4265, and is in the same handwriting as they are.

Considering the fact that other warrants contained in the list are individually described as the "fee" or "surface", it would not make sense to conclude the notation at the end applied to all of them, since it would be more than the estate referred to above it.

Furthermore, this notation never appeared anywhere else. The mineral assessments against warrants 2000 and 2001 for 1901, 1902 and all subsequent years, as shown on the commissioners' land docket, were against the "Minerals" only. Even in the assessor's notebooks of triennial valuations, this notation never appeared with respect to any list containing warrants 2000 and 2001, except in 1901. As a matter of fact, a

different notation appears in the assessor's notebook, with respect to his 1904 triennial valuation. At the head of that list, the following notation appears:

> "Arnold, N. T.
> coal, coal oil, fire clay and
> other mineral and mining rights".

In this list there are included the following:

> "2000 min
> 2001 min"

This list also includes "fee", "surf" and "surface" references against some of the warrants enumerated therein.

It is elementary that only the estate assessed passes at a tax sale. In other words, the title acquired by the purchaser at a tax sale is limited to what was covered by the assessment on which the tax sale was based. That is true both as to unseated land (Miller v. McCullough, 104 Pa. 624; Babcock Lumber Company v. Faust, 156 Pa. Superior Ct. 19), and seated land: Brundred v. Egbert, 164 Pa. 615. In the Babcock case, which involved unseated land, the court said, at page 26:

"The lien for unpaid taxes attaches only to the estate assessed, and that estate, but no more, passes at a public sale even though the authorities assume to convey land against which there had been no valid assessment".

What estate was assessed is a question of fact: Fisk v. Corey, 141 Pa. 334, 347; Brundred v. Egbert, supra.

It is likewise well settled in Pennsylvania, both as to seated and unseated land, that the description in the assessment and in the tax deed must be sufficient to identify the property, or the assessment will be void and title to the property will not be passed by a tax sale. In Hunter v. McKlveen, 361 Pa. 479, which

involved assessments on the unseated list, the Supreme Court of Pennsylvania said at page 482:

"It is the well-settled rule of this Commonwealth that no tax sale of land is valid unless both the assessment and the conveyance by the treasurer contain sufficient descriptions to identify and disclose the property taxed and sold: Fisk v. Corey, 141 Pa. 334, 21 A. 594; Lyman v. Philadelphia, 56 Pa. 488; Phila. v. Miller, 49 Pa. 440. It is not necessary that the description be by metes and bounds, but the land must be so identified that the owner, the collector, and the public can determine what property is being assessed or sold. Norris v. Delaware, L. & W. R. R. Co., 218 Pa. 88". To the same effect, see Humphrey v. Clark, 359 Pa. 250.

In this case, the names used in the "Mineral" assessments would not lead to the gas estate but only to the coal estate acquired by Arnold under the liquidating trustees' deed, because the only names used in the 1901 "Mineral" assessments, upon which plaintiffs contend the 1902 tax sale was based, were Caledonia Coal Company and N. T. Arnold. The whole chain of "Mineral" assessments against warrants 2000 and 2001 shows unmistakably that the coal estate was what was intended to be covered by such assessments, since the only names ever used with respect to such assessments were those of the Caledonia Coal Company and its successors in title to the coal estate, such as Arnold and subsequent owners.

The inaccuracy of the assessor's notation is apparent, and, accordingly, equally apparent is one of the reasons for the rule of law that these assessor's notes are not competent evidence of the estate assessed: Lyman v. The City of Philadelphia, 56 Pa. 488; The City of Philadelphia v. Miller, 49 Pa. 440; Hess v. Herrington, 73 Pa. 438. In Whitworth, "Tax Sales

and Titles and The Evidence of the Same in Pennsylvania", (1900), it is stated, at page 44:

"The triennial assessment is the basis of subsequent annual assessments, but it does not constitute the annual assessment. The charging of land with a tax is an annual process, and to constitute a valid assessment it must be made annually".

It is the commissioners' land docket entries that would indicate or be evidence of the estates assessed for tax purposes. As was stated by the court in M'Call v. Lorimer, 4 Watts 351, "Taxes cannot be due unless they have been assessed. Words and names often mislead. There is in each township of every county an officer called the assessor; and it is too often assumed that he assesses the taxes". The court went on to point out that this assumption was erroneous; that it is the commissioners who make the assessment and not the assessor.

The conclusion clearly follows that the assessment of land for taxes is an annual function performed by the county commissioners and is not the triennial action performed by the assessor. The assessor merely makes a return of his valuations to the commissioners. It follows from this that the competent evidence of what was assessed is the commissioners' records and not the assessor's notebook containing triennial valuations.

We can only conclude that the entries from the assessor's notebook relating to 1901 are not admissible in this case for the purpose of showing the estate assessed in 1901. The proper record to show the estate assessed for tax purposes is the commissioners' land docket. Otherwise, in Clearfield County there would be no valid assessment of unseated land in the years other than the triennial years, since the assessor's notebook only contains triennial valuations of unseated land.

The last two warrants, 5670 and 4265, were erroneously added to the assessor's list for 1901. The list plaintiffs have referred to is for Huston Township. These two warrants should have been included in the Arnold list in Pine Township, as clearly appears from another notation in the assessor's notes for 1904, and in the minutes of the commissioners' meeting of December 2, 1903. This demonstrates further that the addendum to the 1901 triennial list, on which plaintiffs place so much stress, is utterly unreliable.

It follows, therefore, that the commissioners' land docket clearly and definitely points out that insofar as warrants 2000 and 2001 are concerned, *ONLY* "Minerals" were assessed, and that at the 1902 tax sale *ONLY* the "Minerals" were sold and purchased by N. T. Arnold.

Based on either the commissioners' land docket entries or the assessor's notes, we conclude and so find that any estate in warrants 2000 and 2001 received by Arnold at the 1902 tax sale was the same as he had received under the liquidating trustees' deed, which did not convey the gas.

That the whole chain of "Mineral" assessments on warrants 2000 and 2001 was only against the coal estate, which had been acquired by the Caledonia Coal Company in 1887, and not against the gas estate, is further corroborated by the fact that those "Mineral" assessments follow the fractional interests into which the coal estate was divided by N. T. Arnold, whereas the gas estate always remained whole, and was never subdivided.

On September 25, 1901, N. T. Arnold and his wife conveyed a one-fifth interest in the "coal", together with mining rights, "Minerals" underlying warrants 2000 and 2001 to J. Henry Beadle, and a two-fifths interest to W. H. Osterhout. On May 31, 1909, the executors of the estate of N. T. Arnold, deceased, con-

veyed to B. F. Thompson a two-fifths interest in the "coal, coal oil, fire clay and other minerals of every kind and character" underlying warrants 2000 and 2001. All the "Mineral" assessments against warrants 2000 and 2001 after 1911 reflect this exact division.

The gas estate as an intact whole, and without any subdivision whatever, passed from Bowman and Rowland to J. Roman Way and from him to Cyrus Gordon, to whom or his heirs the gas has belonged ever since, subject to the gas leases which the heirs have given to the New York State Natural Gas Corporation and Godfrey L. Cabot, Inc., the intervening defendants herein. It necessarily follows that the "Mineral" assessments against one-fifth, two-fifths and two-fifths interests in "Mineral only" were against only the coal estate and not against the gas estate. Otherwise, the division of the assessments makes no sense whatever. Accordingly, it is clear that the whole chain of "Mineral" assessments against warrants 2000 and 2001 were against the coal estate, not the gas estate. The United States District Court for the Western District of Pennsylvania so held with respect to warrant 2001, in the case of New York State Natural Gas Corporation v. Swan-Finch Gas Development Corporation, supra. That court stated, 173 F. Supp., at page 197:

"The 'Mineral' assessments involving Warrant 2001 which began in the name of the Caledonia Coal Company in the triennial assessment for the year 1889 and which continued against the successors in title of the Caledonia Coal Company were not intended to and did not include the natural gas".

A transaction requiring some discussion is the quitclaim deed of J. Roman Way to Isaac F. Ritchie et al., trustees, dated July 19, 1900. This deed conveyed any interest in the "coal, coal oil, fire clay and other min-

erals of every kind and character in, upon and *undre* inter alia, Warrants 2000 and 2001".

Does this deed add anything in furtherance or substantiation of plaintiffs' theory? We think not. It uses identical language as the 1887 Bowman & Rowland coal deed. If the language, "coal, coal oil, fire clay and other minerals of every kind and character" did not convey the gas to the Caledonia Coal Company when used in the deed of April 5, 1887, from Bowman & Rowland, then, manifestly, the same identical language did not convey the gas to the trustees of the Caledonia Coal Company when used in the deed of July 19, 1900, from Way to them.

This deed was evidently intended as a disclaimer by Way of any interest in the coal and other things which belonged to the Caledonia Coal Company or its liquidating trustees. The occasion for such a disclaimer was without doubt made to remove any cloud cast on the title of said trustees to the coal by the fact that the deed dated September 28, 1898, from the County Treasurer to J. Roman Way purported to convey "the whole of said tract", referring to warrant 2001, without any qualification whatever. The same is true with respect to the deed dated September 28, 1898, from the County Treasurer to J. Roman Way, relating to warrant 2000. On the face of these two deeds, it looks as though the coal estate owned by Caledonia Coal Company had been included. The liquidating trustees were merely trying to clear a cloud on the coal property of Caledonia Coal Company which they were to liquidate under the deed of trust dated March 1, 1899. They were not appointed to start a new gas venture, and consequently were not trying to purchase the gas from Way.

Plaintiffs, in attempting to satisfy the requirement of the law of this state, *that clear and convincing evi-*

*dence relating to the parties to the deed involved*
(1887 deed, Bowman & Rowland to Caledonia Coal
Company) is required to rebut the presumption that
the word "Minerals" when used in a deed does not
include gas, offered into evidence numerous additional
deeds, documents and the like to sustain their theory.

We have carefully examined these various deeds
and documents, dated variously between the years
1889 and 1932, in the light of plaintiffs' theory, and
can only conclude that they do not in any manner de-
termine what the intention of Bowman & Rowland
was at the time they made their conveyance to Cale-
donia Coal Company. One man's intention cannot be
imputed to another, particularly where, as here, there
is no evidence that those parties were acting jointly.
As we view it, they are totally unrelated transactions.

We conclude, therefore, that these exhibits are not
admissible in this proceeding but, even if considered,
they do not come even close to satisfying the require-
ment of the Pennsylvania law that clear and convinc-
ing evidence relating to the parties to the deed in-
volved is required to rebut the presumption that the
word "Minerals", when used in a deed, does not include
gas . . .

### ORDER OF COURT

Now, November 8, 1963, the above-entitled case hav-
ing regularly come on for trial before the court with-
out a jury, after hearing the evidence and the argu-
ments of counsel and due consideration thereof and of
the briefs of counsel, in accordance with the findings
of fact and conclusions of law made by the court, and
filed herewith, and the accompanying opinion, the de-
cision of the court is that plaintiffs have no right,
title or interest in or to any gas under warrant No.
2000 or warrant No. 2001 in Huston Township, Clear-
field County, Pa., but that all of the gas under both

of those warrants belongs to defendants and intervening defendants, and that the intervening defendant, New York State Natural Gas Corporation, owns the only valid gas lease on those warrants, or either of them, and has the sole right to produce gas from under either of those warrants, and that plaintiffs have no right to any recovery against defendants or intervening defendants, or any of them. Unless exceptions to said findings of fact or conclusions of law be duly filed, judgment is directed to be entered for defendants and intervening defendants, with costs.

### OPINION SUR EXCEPTIONS

Morris, P. J.. (Fifty-fourth Judicial District, Specially Presiding), February 23, 1966.—The 61 exceptions filed by plaintiffs attack all of the findings of fact, except nos. 1, 47, 48 and 49, and all of the conclusions of law and the decision made by this court on November 8, 1963, and would have this court completely reverse itself on all of the questions of fact and law which are involved and the ultimate decision.

The parties were accorded ample opportunity to introduce all of the evidence which they wished, to advance every argument orally of which they could think, and to file voluminous written briefs and supplemental briefs without limit, of all of which they availed themselves in full. The court gave all of the evidence and every argument of both parties mature consideration before making its findings of fact, conclusions of law and decision filed on November 8, 1963. No new arguments or authorities have been produced by plaintiffs since then or in support of their exceptions. Nevertheless, the court has carefully reconsidered all of its findings of fact, conclusions of law, opinion and order entered on November 8, 1963, but that study has only reconfirmed the court's conviction that all of those findings of fact, conclusions

of law, opinion and order are clearly correct and should be sustained. None of the exceptions has any merit and they should all be dismissed. The reasons are set forth in our opinion already filed.

Wherefore, we make the following

ORDER OF COURT

And now, February 23, 1966, after hearing the arguments of counsel on plaintiffs' exceptions to the opinion, order of court, findings of fact and conclusions of law filed by this court on November 8, 1963, and after due consideration thereof, it is ordered that all of plaintiffs' said exceptions be and the same are hereby dismissed, for the reasons set forth in the opinion filed by this court on November 8, 1963. In accordance with the findings of fact, conclusions of law and opinion made and filed by this court on November 8, 1963, it is further ordered:

1. That plaintiffs have no right, title or interest in or to any gas under warrant 2000 or warrant 2001 in Huston Township, Clearfield County, Pa.; that all of the gas under both of those warrants belongs to defendants and intervening defendants and that intervening defendant, Consolidated Gas Supply Corporation (formerly New York State Natural Gas Corporation), owns the only valid gas lease on those warrants, or either of them, and has the sole right to produce gas from under either of those warrants; and that plaintiffs have no right to any recovery against defendants or intervening defendants, or any of them.

2. That judgment be, and it hereby is, entered for defendants and intervening defendants, with costs, according to the decision previously filed by this court on November 8, 1963.